## PEOPLE *v.* TODARO.

### ON REHEARING.

1. CRIMINAL LAW—EVIDENCE—HEARSAY ADMISSIBLE AS PART OF RES GESTÆ.

   In prosecution for robbery armed, testimony by officer making arrest that, when he brought defendant from his hiding place, someone in room said, referring to defendant as one of robbers, "That is one of them," was properly admitted as part of *res gestæ*, although it was hearsay, and person making remark was not identified.

2. SAME—STATEMENTS MADE IN PRESENCE OF ACCUSED ADMISSIBLE WHERE NOT DENIED—ACQUIESCENCE.

   Statement made to arresting officer by unidentified person in presence of defendant "That is one of them," meaning that defendant was one of robbers engaged in hold-up, was properly admitted in evidence at his trial, where he made no denial at time it was made, since his acquiescence therein may be inferred therefrom.

   WIEST and BUTZEL, JJ., dissenting.

Error to Wayne; Miller (Guy E.), J. Submitted October 16, 1930. (Docket No. 161, Calendar No. 35,048.) Decided February 27, 1931. Submitted on rehearing June 12, 1931. Decided January 4, 1932.

Joseph Todaro was convicted of robbery armed. Affirmed on rehearing.

*Chawke & Sloan,* for appellant.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Oscar A. Kaufman,* Assistant Prosecuting Attorney, for the people.

### ON REHEARING.

POTTER, J. This case was before the court in *People* v. *Todaro,* 253 Mich. 367, where defend-

Does the fact that one was not a participant or actor in an accident or affray render his statements or exclamations inadmissible as *res gestæ?* See annotation in 25 L. R. A. (N. S.) 550; 36 L. R. A. (N. S.) 530; L. R. A. 1915D, 215.

ant's conviction was affirmed.  There was division of opinion among the members of the court at the time upon the admissibility of the statement made at the time of defendant's arrest by someone identifying Todaro as "one of them," when the police discerned him secreted behind the door and brought him out.  The record is quoted in the opinion cited.  Rehearing was had.  The case is here for reconsideration.  The important question stressed upon the argument is the admissibility of the testimony referred to.  It was testimony of what someone else said.  The person who said it was not present in court, not sworn, did not confront defendant, was not examined nor cross-examined.  It is contended by defendant this testimony was hearsay, erroneously received, the jury improperly were permitted to consider it, defendant is entitled to a reversal of conviction and a new trial of the charge against him.  It is claimed a similar question was before the court in *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich. 99, where it is said:

"When the witness, S. H. Coon, was on the stand, he was asked the question, which I think entirely proper: 'Was your attention at the time called to the fact, whether or not the train came in without sounding the bell or whistle?'  To which his reply was: 'It was talked of at the time, that the train came in without ringing the bell.'  And, in reply to a similar question, George W. Coon says: 'My attention was called to it; I heard some one say it was not rung.'  Each of these replies was objected to, and in each case it is evident that the witness, instead of confining himself to a proper answer to the question, was allowed to bring before the jury the statements of persons, who were not only not sworn, but whose names, even, were not known.  It was impossible that such statements should be without influence upon the jury, especially as what these unknown persons are reported to have said had a tendency to

support a portion of the sworn testimony against another portion upon a disputed point. And, as this testimony from the Coons was incompetent and inadmissible for any purpose, I do not think the error committed in admitting it was cured by the instruction of the judge to the jury, that they ought not to consider it as proof of a substantive fact, as it was only proper as showing that the attention of witnesses was called to the ringing, or not ringing, of the bell.''

Inasmuch as upon this question the rule of evidence in criminal cases is the same as in civil cases, it is claimed the court was in error in admitting this testimony and permitting its consideration by the jury. On the other hand, attention is called by the people to numerous authorities outside of Michigan holding testimony of exclamations by strangers admissible. 4 Chamberlayne on Evidence, § 2597; 3 Wigmore on Evidence (2d Ed.), §§ 1745–1747; Underhill, Criminal Evidence (2d Ed.), § 208; 1 Wharton, Criminal Evidence (10th Ed.), § 262; 1 Greenleaf, Evidence (16th Ed.), § 108; 2 Bishop, New Criminal Practice (2d Ed.), §§ 1085, 1086.

The people admit the general scope of the so-called "hearsay rule," but contend the testimony here involved falls within two well-recognized exceptions thereto. Terminology is not so important as the rule of law. It is immaterial whether the rules applicable are treated as exceptions to a more comprehensive rule or as separate rules in and of themselves. The practical question is whether as a matter of law this testimony was legally admissible. The people claim it was upon two well-settled grounds: *First,* as a part of the *res gestæ;* and, *second,* as a statement made in the presence and hearing of the accused under such circumstances that his failure to say anything in denial of the identification and accusation constituted evidence of

defendant's acquiescence, equivalent to an admission of its truth.

In *People* v. *Foley*, 64 Mich. 148, defendant was arrested and convicted of murdering two infant children in the nighttime. The people claimed defendant arose from bed and strangled the children. Their death was discovered next morning. One Mrs. Rice was permitted to testify as to what defendant's wife said, after discovering, the next morning, the children were dead. This was alleged as error. The court said:

"The testimony referred to respondent's conduct and statement immediately after the discovery of the death of the children, and at the house where it occurred. It was the statements of the wife, in the presence of the respondent, in regard to the manner of the children's death, and appears to have been necessary to a full understanding of what was said by the respondent; and in such case the rule sought to be applied, that the wife cannot testify against the husband, who is the respondent, is not encroached. The wife was not sworn in the case, and the facts queried after were a part of the *res gestæ.*"

In *People* v. *McArron*, 121 Mich. 1, defendant was convicted of manslaughter. It was held (quoting from the syllabus), "Evidence that respondent's mother said to him, immediately after the assault, 'Now, see what you have done,' was properly received as part of the *res gestæ.*"

In *People* v. *Hossler*, 135 Mich. 384, defendant was convicted of manslaughter. The parties had been drinking, got into an argument which resulted in a fight in which defendant so injured another that he died. It is said:

"The evidence shows that, after the fight at the barn, the defendant returned to Hodor's place, and said they had been fighting; and Andrew Payne, Jr.,

Hodor, and the defendant went to defendant's place. On the way, defendant said that he would have killed the old man if it had not been for his wife and children, and that they cried and begged him not to touch him any more. On their arrival, Mrs. Hossler said, in the presence of the defendant, to Hodor, 'Joe, don't let George go at the old man any more.' Error is assigned upon the admission of this remark by Mrs. Hossler upon the ground that it contains an implication that she was of the opinion that defendant had done more than he should have done, and that her admissions were not admissible against him without his consent, any more than her testimony would have been. The remark was made in the presence of her husband, and was, in our opinion, admissible. Upon the latter point, see *People* v. *Foley,* 64 Mich. 148, 158.''

The testimony admitted in these cases was in relation to statements made by others than defendant in his presence. In one case, long after the offense had been committed, and in the others soon afterward. In all of them the testimony was held admissible as a part of the *res gestæ.* If the testimony objected to and held admissible in these cases was proper, clearly that held admissible in this case was within the *res gestæ* rule.

''*Res gestæ* are events speaking for themselves, through the instinctive words and acts of participants, but are not the words and acts of participants when narrating the events. What is said or done by participants under the immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks. In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What they did or said is *res gestæ;* it is part of the transaction itself.'' 1 Wharton Criminal Evidence (10th Ed.), § 262.

It is contended this testimony falls within the rule of admissions by acquiescence. Professor Greenleaf, at an early date in the development of the American jurisprudence, so clearly stated the rule that his language has been followed as a correct statement of the law by our court. *Dawson* v. *Hall,* 2 Mich. 390; *People* v. *Courtney,* 178 Mich. 137. Many authorities are collected, classified, and commented upon in the annotations in 4 Ann. Cas. 1039, to *Merriweather* v. *Commonwealth,* 118 Ky. 870 (82 S. W. 592), cited in *People* v. *Courtney, supra.*

"The statements of another are purely hearsay, unless made under such circumstances, in the presence and hearing of the accused, that his acquiescence in such statements can be plainly inferred from his demeanor or conduct." *People* v. *O'Brien,* 68 Mich. 468.

"Such evidence is most dangerous and should be received with great caution, and not admitted unless of statements or acts which naturally call for contradiction, or unless it consists of some assertion with respect to his rights in which, by silence, the party plainly acquiesces." *People* v. *Smith,* 172 N. Y. 210, 232 (64 N. E. 814).

After the holdup and robbery the police came and arrested part of the participants and recovered from them articles which had been stolen. The police were looking for the rest of the robbers. Defendant had secreted himself behind a door. Testimony that he did so was admissible for the same reason testimony of flight is admissible. When defendant was discovered and brought from his hiding place by police in the presence of the other robbers present, the robbed and perhaps others, someone said, "That is one of them." Defendant was thus identified to the police as a robber. He was about to be arrested. He was being accused of an offense, conviction of

which might deprive him of his liberty. He made no denial of his identity or his guilt. He apparently acquiesced in the identification and accusation. As stated in *People* v. *Todaro, supra:*

"It was for the jury to say whether the statement was made in the presence and hearing of the accused under such circumstances that his acquiescence therein could be inferred from his conduct and demeanor and failure to reply or respond thereto. When statements are made in the presence or hearing of a party to be affected thereby under circumstances from which his acquiescence in their truth may be fairly inferred, though not expressed, they are admissible in evidence and entitled to little or much consideration by the jury in accordance with what they find to be the facts."

A reconsideration of this case does not satisfy us there was error in defendant's conviction, which is affirmed.

CLARK, C. J., and McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred with POTTER, J.

WIEST, J. *(dissenting).* Upon rehearing, two questions are to be reconsidered: (1) Was the testimony of the police officer, relating to a statement of an unknown party, hearsay? (2) If so, did defendant's silence constitute acquiescence?

The relation by the witness of what an unknown third party said was clearly hearsay.

In Potter's Michigan Evidence, p. 2, the learned author succinctly stated:

"Hearsay evidence is a statement which a witness professes to have heard given by a third person as to some particular transaction or thing. Literally, what the witness says he heard another person say."

While this is elementary and needs no justifying citation, we do quote the following observation by the Supreme Court of the United States in *Donnelly* v. *United States,* 228 U. S. 243, 273 (33 Sup. Ct. 449, Ann. Cas. 1913E, 710), relative to the rule of exclusion:

"The chief grounds of its exclusion are, that the reported declaration (if in fact made) is made without the sanction of an oath, with no responsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination, these being most important safeguards of the truth, where a witness testifies in person, and as of his own knowledge; and, moreover, he who swears in court to the extra-judicial declaration does so (especially where the alleged declarant is dead) free from the embarrassment of present contradiction and with little or no danger of successful prosecution for perjury. It is commonly recognized that this double relaxation of the ordinary safeguards must very greatly multiply the probabilities of error, and that hearsay evidence is an unsafe reliance in a court of justice."

In the case at bar the declarant was unknown, and there was no way open to check up on the testimony of the police officer.

I cannot yield to the view expressed by Mr. Justice POTTER. I accept the view of Chief Justice Marshall, as found in *Mima Queen and Child* v. *Hepburn,* 7 Cranch (U. S.), 290:

"The danger of admitting hearsay evidence is sufficient to admonish courts of justice against lightly yielding to the introduction of fresh exceptions to an old and well-established rule."

An apt statement of application of the rule to this case is found in the same work of Potter, Michigan Evidence, p. 314. We quote:

"Testimony of what another told witness as to who committed an offense is hearsay."

Defendant's silence did not make the hearsay testimony admissible for the purpose of identifying him as one of the robbers. He was in a house of prostitution, and not in the position of an intruder, called upon to explain the reason for his presence there. The hearsay statement was addressed to the officer to be acted upon at his peril. The rule of acquiescence, by reason of failure to deny an accusation, is fraught with many exceptions, and at its best brings about the weakest assumption known to the law.

History is replete with instances of denial of accusations by the guilty. In the dark ages of English law an accused who refused to plead to an accusation was adjudged guilty. Since then the law has made progress, and, in this enlightened age, an accused may stand mute and the law requires the entry of a plea of not guilty.

The arrest in the case at bar was made upon a verbal accusation, and, so far as the record discloses, the accuser has not been sought. It would seem that the officer, upon hearing the accusation leading him to make the arrest, would, at least, have inquired the name of the accuser.

We do not pass upon the question of defendant's guilt, but, if he is guilty, the law demands better evidence than what an unknown person in a house of prostitution said to a police officer.

Submission to arrest and keeping silent to an accusation is not an admission of guilt on a par with flight from justice, and never enough to convict

an accused and send him to prison for a long term of years.

The conviction should be reversed, and a new trial ordered.

BUTZEL, J., concurred with WIEST, J.