PEOPLE v SMITH

OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESS—DUTY TO PRO-
DUCE—PROSECUTOR—DUE DILIGENCE—DISCRETION.

The prosecution may be excused from its duty to produce a res
gestae witness upon a showing of due diligence in the search
for the witness; the question of due diligence is within the
discretion of the trial court and its determination will not be
overturned unless an abuse of discretion is shown.

2. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESS—FAILURE TO IN-
DORSE—DUE DILIGENCE—APPEAL AND ERROR—REVERSIBLE ER-
ROR.

Every failure to indorse a res gestae witness and every failure to
exercise due diligence to produce an indorsed witness is not
reversible error.

3. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—APPEAL AND ER-
ROR—INDEPENDENT DETERMINATION—REVERSIBLE ERROR—MIS-
TAKE.

The Court of Appeals when reviewing the voluntariness of a

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 251.

29 Am Jur 2d, Evidence §§ 180, 186.

58 Am Jur, Witnesses § 3.

[2] 41 Am Jur 2d, Indictments and Informations §§ 55, 56.

[3] 21 Am Jur 2d, Criminal Law §§ 485–487, 505.

[4–6] 21 Am Jur 2d, Criminal Law §§ 317, 357, 367, 449.

29 Am Jur 2d, Evidence §§ 555–557.

Necessity of informing suspect of rights under privilege against self-
incrimination, prior to police interrogation. 10 ALR3d 1054.

Duty to advise accused as to right to assistance of counsel. 3 ALR3d
1003.

Court's duty to advise or admonish accused as to consequences of
plea of guilty, or to determine that he is advised thereof. 97
ALR2d 549.

[6] 21 Am Jur 2d, Criminal Law §§ 313, 314.

Accused's right to counsel under Federal Constitution—Supreme
Court cases. 2 L Ed 2d 1646. s. 9 L Ed 2d 1260.

Accused's constitutional right to assistance of counsel. 84 L Ed 383.

confession must examine the entire record and make an independent determination; reversal of a trial judge's finding is proper where the reviewing court is left with the definite and firm conviction that a mistake was made by the trial judge.

4. CRIMINAL LAW—ARREST—QUESTIONING—CUSTODIAL INTERROGATION —WARNINGS—RIGHT TO REMAIN SILENT—EVIDENCE—RIGHT TO COUNSEL—WAIVER OF RIGHTS—VOLUNTARINESS.

Prior to any questioning of a person who has been taken into custody, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to an attorney, either retained or appointed; these rights may be waived provided the waiver is made voluntarily, knowingly and intelligently; however, there can be no questioning if the person indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking.

5. CRIMINAL LAW—CONFESSIONS—STATEMENTS BY DEFENDANT—VOLUNTARINESS—CONSTITUTIONAL LAW—CONSTITUTIONAL RIGHTS— EXPLANATION OF RIGHTS—INTELLIGENCE OF DEFENDANT—RIGHT TO COUNSEL.

The determination that a defendant's statements were made voluntarily was proper where the defendant's constitutional rights were read to her and each right was explained before she made her statements, the defendant was an intelligent person although she had only a ninth-grade education, the defendant knew she had a right to an attorney and she elected to make a statement without one, and a tape recording of the entire interrogation process indicates the statements were voluntary.

DISSENT BY T. M. BURNS, J.

6. CRIMINAL LAW—CONFESSIONS—STATEMENTS BY DEFENDANT—VOLUNTARINESS—RIGHT TO COUNSEL—REQUEST FOR COUNSEL—EDUCATION OF DEFENDANT—WAIVER—VOLUNTARINESS.

*Failure to secure counsel for a defendant prior to questioning constituted a denial of the right to counsel and rendered the defendant's statement involuntary where the defendant had inquired whether an attorney could be appointed if she wanted one, the defendant decided to answer questions only after she was told she could not obtain an attorney until she went to court, and due to the defendant's limited education she might have understood she was not entitled to an attorney until she went to court; defendant's decision to answer questions and sign a waiver form did not constitute a voluntary, knowing and*

*intelligent waiver of the right to counsel under the circumstances.*

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 October 17, 1974, at Detroit. (Docket No. 17911.) Decided February 24, 1975.

Debra Smith was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and CARLAND,* JJ.

V. J. BRENNAN, P. J. Defendant Debra Smith was convicted by a jury of second-degree murder, MCLA 750.317; MSA 28.549, as a result of the shooting death of Jack Firestein. She was sentenced to a term of 7-1/2 to 20 years in prison and now appeals.

Defendant first contends that the prosecution failed to show the due diligence necessary to excuse the nonproduction of a res gestae witness.

It is true that as a general rule the prosecution has an obligation to produce all res gestae witnesses for examination at trial. *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973), *People v Phillips,* 37 Mich App 242; 194 NW2d 501 (1971),

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

*People v Dickinson,* 2 Mich App 646; 141 NW2d 360 (1966). However, one of the well-recognized exceptions to this general rule is that the prosecution may be excused from such a duty upon a showing of due diligence in the search for such witnesses. *People v Bersine, supra, People v Russell,* 27 Mich App 654; 183 NW2d 845 (1970), *People v Lewis,* 25 Mich App 132; 181 NW2d 79 (1970), *People v Gibson,* 253 Mich 476; 235 NW 225 (1931). The question of due diligence is a matter within the discretion of the trial court and will be overturned on appeal only where a clear abuse of discretion is shown. *People v Bersine, supra, People v Russell, supra, People v Garcia,* 39 Mich App 45; 197 NW2d 287 (1972).

In the present case, at trial the prosecutor detailed the efforts made to find the witness. The record reveals that a considerable effort had been made in an attempt to locate the witness, but that her whereabouts was still unknown. After hearing all the testimony relating to this matter, the trial court excused the prosecution from producing the witness finding that the prosecution had made a diligent effort in trying to locate her. After carefully reviewing the record, we are of the opinion that the trial court did not abuse its discretion in excusing the prosecution from producing the witness on the ground of due diligence.

Defendant next claims that the prosecution's failure to endorse and produce two alleged witnesses was reversible error. We disagree.

It is the clear trend of appellate authority in our state that every failure to endorse a res gestae witness and that every failure to exercise due diligence to produce an endorsed witness does not require reversal. *People v Cornell Harris,* 56 Mich App 267; 224 NW2d 57 (1974), *People v James,* 51

Mich App 777; 216 NW2d 473 (1974), *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), *People v Romano,* 35 Mich App 135; 192 NW2d 271 (1971). In our opinion the failure of the prosecution to endorse and produce the witnesses in question was harmless error, not requiring reversal.

Finally, defendant claims that her conviction must be reversed because the trial court erroneously concluded that defendant's confession was voluntary. Defendant argues that the confession was obtained in violation of the *Miranda* rule.[1]

According to *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), we are required to examine the entire record and make an independent determination on the question of voluntariness. See also *People v Inman,* 54 Mich App 5, 7–8; 220 NW2d 165 (1974), and *People v Mosley,* 51 Mich App 105, 106–107; 214 NW2d 564 (1974). Reversal of the trial court's finding of fact may occur where, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was committed by the trial judge. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974).

Our review of the record in the present case reveals that this 22-year-old defendant was arrested by Detroit police officers at approximately 1:45 p.m. on February 12, 1973. At approximately 3:50 p.m., three Highland Park police officers began questioning defendant concerning her possible involvement in the death of Jack Firestein. She did not have an attorney present. Later that evening, at approximately 9 p.m., defendant was questioned again without an attorney present. Both of these statements were recorded by the Highland Park police.

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Prior to trial, defense counsel moved to have the statements suppressed from evidence. A *Walker*[2] hearing was held to determine the voluntariness of the statements. At the hearing defendant took the stand and testified that before the interrogation began she was advised of her constitutional rights, that she asked the officers whether an attorney could be appointed if she wanted one, and that the officers replied that she could not get an attorney at that time, but that she would get one when she went to court, which she was told would be in a couple of days. Defendant then testified that she decided to go ahead and talk to the officers. Detective Keliher, one of the officers who was present when defendant was questioned, testified at the *Walker* hearing and stated that the defendant never requested an attorney.

After considering the evidence presented, the trial court found that defendant had been advised of her rights and that the statements were made voluntarily. The statements were subsequently admitted into evidence at trial.

In *Miranda v Arizona,* 384 US 436, 444-445; 86 S Ct 1602, 1612; 16 L Ed 2d 694, 706-707 (1966), the United States Supreme Court held that once a person has been taken into custody:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

that he wishes to consult with an attorney before speaking there can be no questioning."

Defendant claims that it was not made clear to her that a lawyer would be appointed if she wanted one. Our examination of the *Walker* hearing transcript discloses that not only were the *Miranda* rights and warnings read to her but that each right was explained to her before she began to make her statement. While it is true that the defendant only has a ninth-grade education, it should be pointed out that the trial judge, after observing her conduct, specifically observed that the defendant was an intelligent person. The transcript of the *Walker* hearing makes clear that defendant knew she had a right to an attorney, appointed or otherwise, and that she elected to make a statement without one. More important in this regard, however, is the transcript of a tape recording which was made of the entire interrogation process, including the giving of the *Miranda* warnings, the interrogation by the police officers and defendant's confession. This transcript, which was examined and admitted into evidence by the trial judge, clearly supports the trial court's ruling.

During the *Walker* hearing the defendant took the stand and related her account of what occurred at the time she was advised that she could have a lawyer present during any questioning. Her version of the advice that was given differed substantially from that of the police officers. After completely reviewing the testimony contained in the *Walker* hearing transcript, as well as examining the tape-recording transcript, we can readily see why the court chose to believe the police officers rather than the defendant. On this record we are unable to say that the trial judge erred in

determining that defendant's statements were voluntarily made and admissible. We therefore refuse to reverse defendant's conviction on this ground.

Finally, we have carefully considered defendant's remaining assignments of error. A review of the record persuades us that no error warranting or requiring reversal of defendant's conviction has been disclosed. Decisional discussion is, therefore, unnecessary.

Affirmed.

Cᴀʀʟᴀɴᴅ, J., concurred.

T. M. Bᴜʀɴs, J. *(dissenting).* I cannot agree with that part of the majority opinion which concludes that defendant's confession was voluntary and, therefore, admissible.

Detective Keliher, one of the officers who was present when defendant was interrogated, testified at the *Walker* hearing, and the following colloquy took place between the detective and defense counsel:

*"Mr. Kosick:* All right. Did you tell Debra that if she wanted a court-appointed attorney it would be a few days before one could be appointed for her?

*"Detective Keliher: I told her that we couldn't get her one at that time. I am sure I said that to her* because we can't.

*"Mr. Kosick:* You couldn't get one even appointed until the arraignment?

*"Detective Keliher:* The Court would appoint one. I would not, sir." (Emphasis added.)

In *People v Lewis,* 47 Mich App 450; 209 NW2d 450 (1973), the defendant, a 17-year-old with a ninth-grade education, was arrested and transported to the police station for questioning. After

being informed of his rights, he asked whether it
was possible to obtain an attorney at that hour.
When the police responded that it was not possi-
ble, he told them to "forget it" and subsequently
confessed. The trial court held the confession ad-
missible, but this Court, in an opinion which I
authored, reversed stating at pp 452–453 209
NW2d 451:

"Applying the doctrine of *Miranda* to the case at
hand, it is readily apparent that the defendant, by
inquiring as to whether it was possible to obtain an
attorney at that early hour, sufficiently indicated a
desire to consult an attorney before speaking. We are
not unmindful that the police may have acted inno-
cently by stating that an attorney was not available at
that time of the day. Nonetheless, the police were not
free to ignore the letter and spirit of *Miranda,* and the
questioning should have ceased until such time as
counsel could have been secured on behalf of the de-
fendant. It was only after the defendant was told coun-
sel could not be obtained that he told the officers to
'forget it' and began to answer the questions which led
to his incriminating statement. It is our opinion that
under these circumstances defendant's statement to
'forget it' did not constitute a voluntary, knowing, and
intelligent waiver of the right to counsel."

Such is the case here. As in *Lewis,* the defend-
ant here did not specifically request an attorney.
However, it is my opinion that by inquiring
whether an attorney could be appointed if she
wanted one, the defendant "sufficiently indicated a
desire to consult an attorney before speaking". I
am aware that the police may have acted inno-
cently by telling defendant that she would receive
an attorney when she went to court. However, I
feel that due to her limited education, defendant
might have understood the officers to mean that

she was not entitled to an attorney until she went to court.

As in *Lewis,* I believe that the police, in questioning defendant before counsel was secured in her behalf, failed to observe the letter and spirit of *Miranda.* It was only after defendant was told that she could not obtain an attorney until after she went to court that she decided to answer the questions which led to the statements in question. It is, therefore, my opinion that under these circumstances defendant's decision to answer questions and her subsequent signing of the waiver form did not constitute a voluntary, knowing and intelligent waiver of the right to counsel.

The failure to secure counsel for the defendant after a sufficient request therefor constituted a denial of her right to counsel and thus rendered the statement in question involuntary. Therefore, it was reversible error to admit the statement into evidence at trial.

Accordingly, I would reverse and remand for a new trial with instructions that defendant's confession be suppressed as evidence.